Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Patrick J. Cashman
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
APR 06 2023
SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

Plaintiff,

v.

JONAH PIERCE,

Defendant.

Case No.: 2:22-CR-52-TOR-5

Plea Agreement

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney the Eastern District of Washington, and Patrick J. Cashman, Assistant United States Attorney for the Eastern District of Washington, and Defendant Jonah Pierce ("Defendant"), both individually and by and through Defendant's counsel, Bryan Whitaker, agree to the following Plea Agreement.

1. Guilty Plea and Maximum Statutory Penalties

Defendant agrees to enter a plea of guilty to Count 14 of the Superseding Indictment filed on June 7, 2022, which charges Defendant with Receipt of Stolen Government Property with a value less than $1,000, in violation of 18 U.S.C. § 641, a Class A misdemeanor.

Defendant understands that the following potential penalties apply:

a. a term of imprisonment of not more than 1 year;

b. a term of supervised release not to exceed 1 year;

c. a fine of up to $100,000; and

d. a $25 special penalty assessment.

2. Supervised Release

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision for a period of not more than one (1) year in prison.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3. The Court is Not a Party to this Plea Agreement

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

a. sentencing is a matter solely within the discretion of the Court;

b. the Court is under no obligation to accept any recommendations made by the United States or Defendant;

c. the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

d. the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

e. the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

f. the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

4. Waiver of Constitutional Rights

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

a. the right to a jury trial;

b. the right to see, hear and question the witnesses;

c. the right to remain silent at trial;

d. the right to testify at trial; and

e. the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

5. Elements of the Offense

The United States and Defendant agree that in order to convict Defendant of Receipt of Stolen Government Property with a value less than $1,000, in violation of 18 U.S.C. § 641, the United States would have to prove the following beyond a reasonable doubt.

a. *First*, on or about April 26, 2022, within the Eastern District of Washington, Defendant knowingly received, concealed, or

retained property of value, to wit: one Aimpoint, M68, CompM4s, Red Dot optic, bearing serial number K2593105;

b. *Second*, the property belonged to the United States; and

c. *Third*, the Defendant knew the property had been stolen;

d. *Fourth*, the Defendant intended to convert the property to his own use or gain; and

e. *Fifth*, the value of the property was less than $1,000.

6. Factual Basis and Statement of Facts

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement.

In August 2021, the Federal Bureau of Investigation (FBI) and United States Air Force Office of Special Investigations (AFOSI) initiated an investigation into Airman John I. Sanger. The investigation involved the use of an undercover agent (UC). During the investigation into Airman Sanger, the FBI and AFOSI learned Sanger was able to secure stolen military ammunition from a member, later identified as Nathan Richards, of the Fairchild 92nd Security Forces Squadron Combat Arms Training Management (CATM) section. The CATM is responsible for ensuring members of the Air Force are trained and combat ready to safely use and maintain all types of small arms. Richards invited Sanger, who in turn invited the UC, to go shooting with he and other members of CATM at Fishtrap Lake, in the Eastern District of Washington.

On March 12, 2022, the UC, Sanger, Richards, Eric Eagleton, and others, not including the Defendant, arrived at Fishtrap Lake and engaged in target shooting using stolen ammunition, specifically green tip 5.56 M855 ammunition, from the U.S. Air Force's CATM section. At the conclusion of the event, Sanger was provided additional stolen ammunition from Richards for his personal use. Sanger subsequently provided the UC a small portion of the stolen ammunition.

On March 28, 2022, Sanger sent a text message to the UC stating Eagleton contacted him (Sanger) because Eagleton had additional ammunition to give him. A portion of the text message conversation follows:

Sanger: *"Eagle can hook us up with some rounds. Dude's awesome."*

UC: *'Really? How much does he want for them?"*

Sanger: *"Nothing. It's stolen."*

UC: *"Seriously? Bro that's awesome. Think we can get them before Saturday's range day?"*

Sanger: *"Yeah he's solid man. I'm gonna (sic) get the ammo tomorrow."*

The following day, March 29, 2022, AFOSI agents observed Eagleton and Sanger meet in the Northern Quest Resort and Casino, located at 100 N. Hayford Rd., Airway Heights, Washington. The agents observed Eagleton retrieve a military style green ammunition can from his Ford F-150 pickup truck and then meet with Sanger. Eagleton was observed opening the top of the ammunition can and showing Sanger the contents before handing the ammunition can over.

Following the meeting between Sanger and Eagleton, Sanger sent the UC text messages with photographs indicating the receipt of stolen 5.56mm ammunition.

Subsequently, on April 2, 2022, Sanger and the UC shot approximately 250 rounds of the stolen ammunition Sanger received from Eagleton at Fishtrap Lake. During the shoot, the UC recovered four ammunition clips containing 40 rounds of 5.56mm ammunition from Sanger. Also during the shoot, the UC photographed

the side of the green ammunition container which Sanger brought to the shoot. A review of CATM records indicated this ammunition was expended sometime between March 2, 2021 and July 21, 2021.

Based upon the above events and other investigative steps, the FBI and AFOSI executed a series of search warrants at Sanger and Eagleton's residences on April 26, 2022. Simultaneous to the execution of the search warrants, members of the CATM, including the Defendant, were brought to the local AFOSI office to be interviewed. The Defendant was advised of and waived his Article 31(b), Uniform Code of Military Justice (UCMJ) rights and provided a statement. During the statement, the Defendant admitted to participating in a scheme to steal ammunition and optics from the CATM section. The Defendant subsequently consented to a search of his residence, which is within the Eastern District of Washington. During the consent search, agents located between approximately 1,000 and 2,000 rounds of stolen military ammunition and a stolen Aimpoint, M68, compM4s, Red Dot optic, bearing serial number K2593105.

The Defendant stipulates the stolen optic belonged to the United States Air Force and the parties further agree the combined value of the stolen optic and the ammunition, is less than $1,000.

7. <u>The United States' Agreements</u>

The United States Attorney's Office for the Eastern District of Washington agrees that at the time of sentencing, the United States will move to dismiss:

Count 1 – Conspiracy to Commit Theft of Government Property and Possession of Stolen Ammunition, in violation of 18 U.S.C. § 371;

Count 8 – Possession of Stolen Ammunition, in violation of 18 U.S.C. §§ 922(j), 924(a)(2);

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is

either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

8. United States Sentencing Guidelines Calculations

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

a. Base Offense Level

The United States and the Defendant agree the base offense level for Theft of Government Property with a value less than $1,000, in violation of 18 U.S.C. § 641 is 12. *See* U.S.S.G. §2B1.1(a)(2), (c); *see also* U.S.S.G. §2K2.1(a)(7).

b. Specific Offense Characteristics

The United States and the Defendant make no agreement on the application of specific offense characteristics. The parties are free to argue for or against the application of any specific offense characteristics.

c. Acceptance of Responsibility

The United States will recommend that Defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), if Defendant does the following:

i. accepts this Plea Agreement;

ii. enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

iii. demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

iv. provides complete and accurate information during the sentencing process; and

v. does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

d. Administrative Separation from the United States Air Force

The Defendant acknowledges, independent from his plea of guilty in this matter, the United States Air Force may seek to administratively separate him from the service with an other than honorable characterization of service. The Defendant further acknowledges that a plea of guilty in this matter will likely have significant impact on his future service. The Defendant acknowledges, based upon his plea of guilty in this matter, that he has been notified of his right to proceed to board proceedings and intends to waive his right to a board.

e. No Other Agreements

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

f. Criminal History

The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

9. Incarceration

The United States agrees to recommend a sentence no higher than the low end of the applicable guideline as determined by the Court at sentencing.

Defendant may recommend any legal sentence.

10. Supervised Release

The United States and Defendant each agree to recommend 1 year of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

a. The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control; and

b. No contact with co-defendants and witnesses.

11. Criminal Fine

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

12. Mandatory Special Penalty Assessment

Defendant agrees to pay the $25 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

14. Payments While Incarcerated

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

15. Additional Violations of Law Can Void Plea Agreement

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

16. Waiver of Appeal Rights

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

Defendant expressly waives all of Defendant's rights to appeal Defendant's conviction and the sentence the Court imposes.

Defendant expressly waives Defendant's right to appeal any fine or term of supervised release imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

17. Compassionate Release

In consideration for the benefits Defendant is receiving under the terms of this Plea Agreement, Defendant expressly waives Defendant's right to bring any motion for Compassionate Release other than a motion arising from one of the specific bases set forth in this paragraph of this Plea Agreement. The United States retains the right to oppose, on any basis, any motion Defendant files for Compassionate Release.

The only bases on which Defendant may file a motion for Compassionate Release in the Eastern District of Washington are the following:

a. Medical Condition of Defendant

i. Defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia; or

ii. Defendant is suffering from a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which Defendant is not expected to recover.

b. Age of Defendant

i. Defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process; and has served at least 10 years or

75 percent of Defendant's term of imprisonment, whichever is less; or

ii. Defendant is at least 70 years old and has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which Defendant is imprisoned.

c. Family Circumstances

i. The caregiver of Defendant's minor child or children has died or become incapacitated, and Defendant is the only available caregiver for Defendant's minor child or children; or

ii. Defendant's spouse or registered partner has become incapacitated, and Defendant is the only available caregiver for Defendant's spouse or registered partner.

d. Subsequent Reduction to Mandatory Sentence

i. Defendant pleaded guilty to an offense which, on the date of Defendant's guilty plea, carried a mandatory minimum sentence; and

ii. after the entry of judgment, the length of the mandatory minimum sentence for Defendant's offense of conviction was reduced by a change in the law; and

iii. the application of the reduced mandatory minimum sentence would result in Defendant receiving a lower overall sentence.

e. Ineffective Assistance of Counsel

i. Defendant seeks Compassionate Release based on a claim of ineffective assistance of counsel arising from information that Defendant both

1. did not know at the time of Defendant's guilty plea, and
2. could not have known, in the exercise of due diligence, at the time the Court imposed sentence.

18. Withdrawal or Vacatur of Defendant's Plea

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

a. this Plea Agreement shall become null and void;

b. the United States may prosecute Defendant on all available charges;

c. The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

d. the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and defenses Defendant might have to the United States' decision about how to proceed, including a claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

19. Integration Clause

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

## Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

Patrick J. Cashman
Assistant United States Attorney

4/6/23
Date

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

Jonah Pierce
Defendant

4/6/23
Date

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's guilty plea.

Bryan Whitaker
Attorney for Defendant

4/6/23
Date